United States District Court
Southern District of Texas
**ENTERED**
July 23, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HECTOR ROMAN CHAIDEZ CAZARES, *Plaintiff,* § § § | |
| v. § § | CIVIL ACTION NO. 4:17-CV-02595 |
| NANCY BERRYHILL, Acting Commissioner of Social Security Administration, *Defendant.* § § § § | |

## **MEMORANDUM AND RECOMENDATION**

Plaintiff Hector Roman Chaidez Cazares filed this case under the Social Security Act, 42 U.S.C. 405(g) for review of the Commissioner's final decision denying his applications for social security disability insurance benefits and supplemental security income. Dkt. 1. Cazares and the Commissioner have both moved for summary judgment. Dkt. Nos. 6, 7. After reviewing the motions, the record and the law, it is recommended that Cazares' motion be denied, and the Commissioner's motion be granted.

### **Background**

Cazares filed his claims in May 2013, alleging he became disabled on November 18, 2010.[1] His claims were denied on initial review and appeal, so he requested a hearing before an administrative law judge. That hearing took place on February 24, 2015.

Following the hearing, the ALJ denied the claims by written decision on June 17, 2015, after completing the required five-step[2] sequential analysis. Although the ALJ

---

[1] Cazares filed his application for disability insurance benefits on May 7, 2013, and his application for supplemental security income benefits on May 11, 2013.

[2] "The sequential evaluation process is a series of five 'steps' that we follow in a set order. . . .These are the five steps we follow:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that

determined at step two that Cazares had severe impairments of lumbar spine degenerative disc and joint disease with radiculopathy, retrolisthesis, herniated nucleus pulposus status post-surgery, anxiety disorder, major depressive disorder, obsessive compulsive disorder, and obesity, he concluded at step three that those impairments, individually and together, did not meet or medically equal any of the Agency's listed impairments. Dkt. 3-3 at 75-77. The ALJ decided that Cazares had the residual functional capacity to perform light work[3] with some exertional limitations: he can stand or walk only four hours and sit for six hours in an eight hour work day, only occasionally balance, stoop, crouch, crawl and kneel, and be exposed to vibration only occasionally. The ALJ also determined that Cazares can only understand, remember, and carry out short, simple instructions, perform routine, predictable, repetitive tasks, make simple decisions, be exposed to only a few workplace changes, and have only occasional interaction with the public and co-workers. *Id.* at 78. The ALJ conceded that Cazares was unable to perform any of his past relevant

---

you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§404.1520, 416.920.

[3] The ALJ defined light work as "lifting and/or carrying up to 20 pounds occasionally and lifting and/or carrying up to 10 pounds frequently; standing and walking up to 6 hours in an 8-hour workday; sitting up to 6 hours in an 8-hour workday; and pushing and pulling the same weight as lifting and carrying (See CFR 416.967(b))." Dkt. 6-3 at 17.

work as a sales associate, cable installer, or machine operator because those positions exceeded his residual functional capacity. However, he concluded that Cazares could work as an assembly press operator, electric seal machine operator, or bottling line attendant, and so he was not disabled under the Act. Dkt. 3-3 at 86.

Cazares sought review of the ALJ's decision from the Appeals Council. With the request, his attorney forwarded additional records from Ben Taub Hospital and the Strawberry Clinic. Dkt. 3-3 at 22-59. The Appeals Council said most of the additional records reflected treatment received after the ALJ's decision and they would not affect that decision.[4] Dkt. 3-3 at 14. It did consider some of the records from the Strawberry Clinic because they showed treatment from before the date of the decision. *Id.* at 17. On November 14, 2016, the Appeals Council decided the additional evidence did not provide a basis for changing the ALJ's decision. *Id.* at 14. Following this denial, Cazares hired a new lawyer who, on December 19, 2016, requested the Appeals Council set aside its denial. Dkt. 3-3 at 8-9. With the request, Cazares allegedly submitted additional medical records and other materials. *Id.* On June 16, 2017, the Appeals Council again denied his request. Dkt. 3-3 at 2-7. In doing so, it said that it considered additional evidence, including the records from the Strawberry Clinic and Ben Taub Hospital it had declined to consider in his first appeal. *Id.* at 3. The Appeals Council determined these records did not show a reasonable probability that they would change the outcome of the decision,

---

[4] Cazares also faxed records reflecting mental health treatment with Dr. Daniel Koppersmith, a psychiatrist, and Dr. Kameelah Rahmaan-Russell, a psychiatrist, to the Social Security administration on September 7, 2016. Dkt. 3-3 at 22-36. The first twelve pages of the fax were Dr. Koppersmith's records for treatment between July 28, 2016 and August 25, 2016; the last two pages were letters from Dr. Russell. Dkt. 3-3 at 23-36. The Appeals Counsel did not expressly mention the records from Dr. Koppersmith in its rejection, but it did reference the letters from Dr. Russell, suggesting it had received and reviewed all of the fax.

and rejected his appeal. *Id.* The Appeals Council did not directly address any of the new records allegedly included with the second appeal.[5] Cazares then filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Section 405(g) of the Social Security Act governs the standard of review in disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standard, and (2) the Commissioner's factual findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylo v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

A claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992). The Commissioner applies a five-step sequential analysis to decide disability status. The claimant bears the burden of proof on the first four steps to establish that a disability exists. If successful, the burden shifts to the Commissioner, in step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 152 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts back to the

---

[5] Cazares' attorney identified seven categories of documents allegedly attached to the request for reconsideration. Many of these documents are absent from the record, including any materials that had not previously been submitted by either Cazares or his attorney in the previous appeal. Accordingly, there is no indication the Appeals Council actually received any additional evidence with the December 2016 request for reconsideration.

claimant to show that he is unable to perform the alternative work. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's decision must stand or fall with the reasons stated in the ALJ's final decision. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Post hoc rationalizations for an agency decision are not to be considered by a reviewing court. *SEC v. Chenery*, 332 U.S. 194, 196 (1947).

## Analysis

Cazares, in a single point of error, contends that the appeals council did not properly consider the new evidence he submitted after the ALJ's decision was rendered. Specifically, he points to the Appeals Council's response to his second request for reconsideration: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." Dkt. 6 at 6, Dkt. 3-3 at 3. Cazares argues these statements call into question whether the Appeals Council satisfied its obligation to consider the new evidence. Dkt. 6 at 7.

To justify a remand, 42 U.S.C. § 405(g) requires that the evidence be "new" and "material," as well as a showing of "good cause" for failing to provide this evidence at the original proceedings. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). New evidence is generally evidence that becomes available after the Secretary's decision. *Id*. Newly submitted evidence is material if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550,

551-52 (5th Cir. 2003). Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). Generally, the Commissioner need not consider evidence that concerns a later-acquired disability or the subsequent deterioration of a previously nondisabling condition because it fails to meet the materiality requirement. *Id.* at 183. Post-dated records may meet the first prong of materiality, however, as long as the records relate to the time period for which disability benefits were denied. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (holding that new evidence of scar tissue related to the adjudicative period because it resulted from a prior surgery and explained the symptoms occurring during that period). An ALJ's failure to include certain documentation in the record is grounds for reversal only if the applicant can show prejudice. *Brock v. Charter*, 84 F.3d 726, 728 (5th Cir. 1996) (requiring applicant to show that omitted material "might have altered the result").

When a claimant submits new *and* material evidence, the Appeals Council must consider the evidence in deciding whether to grant a request for review. 20 C.F.R. § 404.970(b). However, the regulations do not require the Appeals Council to discuss the newly submitted evidence, or even to give reasons for denying review. *See Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). Nonetheless, new evidence submitted to the Appeals Council does become part of the record upon which the Commissioner's decision is based and a court considering the Appeals Council's decision must review the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence, remanding only if the new evidence dilutes the record to such an extent that the ALJ's

decision becomes unsupported. *Higginbotham v. Barnhart*, 163 Fed.Appx. 279, 281-82 (5th Cir. 2006); *Morton v. Astrue*, No. 3:10–CV–1076–D, 2011 WL 2455566 at *7 (N.D. Tex. June 20, 2011) ("The proper inquiry concerning new evidence takes place in the district court, which considers whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence.") (citations omitted).

The Commissioner contends the Appeals Council properly discharged its duty because it reviewed the additional evidence supplied, noted that much of it was for treatment after the relevant time period so it did not show a reasonable probability it would change the outcome of the ALJ's decision, and, although it declined to "exhibit" the new information, included those materials in the file as required by the regulations. Dkt. 7-1 at 7; Hearings, Appeals, and Litigation Law Manual (HALLEX) I-3-5-20.

In his motion for summary judgment, Cazares has given no explanation for his failure to submit the evidence prior to the ALJ's written decision. "The Appeals Council (AC) will only consider additional evidence as a basis for granting review if the claimant shows good cause for not submitting the evidence to the Social Security Administration (SSA) previously. . . ." HALLEX I-3-5-20; *see also* 20 C.F.R. § 416.1470 ("the Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence"). Even so, the record shows that the Appeals Council did review the additional materials submitted by Cazares despite the absence of any explanation for its late submission.

On November 14, 2016, the Appeals Council considered and exhibited medical records from the Strawberry Clinic showing treatment on February 26, 2015 and April 21,

7

2015, before the ALJ's decision. It pointed out that Plaintiff's treatment for a sore throat on April 21, 2015, would not change the outcome of the ALJ's ruling. Dkt. 3-3 at 14. The Appeals Council reached the same conclusion regarding the medical records for psychiatric treatment at Ben Taub Mental Health Clinic on February 26, 2015. Dkt. 3-3 at 97-100. At that time, Cazares had not been seen in the psychiatric department at Ben Taub in four months because he didn't believe he was receiving the right help. *Id.* at 98. He asked for "a statement or something to help me, or guide me [with regard to my] OCD for disability," and said his lawyer told him to show the doctor evidence of his numerous jobs and his difficulty in keeping a job. *Id.*

In her examination of Cazares during this visit, Stephanie Hernandez, M.D. recorded reports of depression and passive suicidal ideation without plans, OCD compulsions, and excessive worrying with difficulty concentrating. *Id.* She ascribed a GAF score of 60[6] to him, reflecting her opinion that Cazares had moderate symptoms of mental illness, or that his functioning in school, work, or social situations was moderately impaired. *Id.* at 100. This record does not undermine the ALJ's decision, but rather is consistent with, and supports, his conclusion. The ALJ, in his decision, concluded that Cazares had moderate difficulties in social functioning and moderate difficulties in concentration, persistence or pace. Dkt. 3-3 at 77. This is, essentially, the same

---

[6] The GAF scale is used to rate an individual's "overall psychological functioning." AMERICAN PSYCHIATRIC INSTITUTE, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM–IV") 32 (4th ed. 1994). The scale ascribes a numeric range from "1" ("persistent danger of severely hurting self or others") to "100" ("superior functioning") as a way of categorizing a patient's emotional status. *See id.* A GAF score of 51–60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

conclusion that Dr. Hernandez reached. Rather than changing the outcome of the ALJ's decision, the February 26, 2015 records from Ben Taub support the ALJ's opinion.

The Appeals Council also reviewed, but initially declined to consider, medical records from an annual checkup on February 2, 2016, and a psychotherapy assessment on July 7, 2016. It refused to consider these records from the Strawberry Clinic because they reflected treatment received after the date of the ALJ's decision that was issued on June 17, 2015. Dkt. 3-3 at 14. The Council also declined to consider records from the Ben Taub psychiatric clinic for treatment on May 12, 2016, and July 12, 2016, as well as two letters from Dr. Kameelah Rahmaan-Russel, for the same reason. *Id.* The Appeals Council subsequently considered these records and concluded they did not show a reasonable probability the ALJ's decision would change. Dkt. 3-3 at 3. The court agrees.

Additional evidence justifies remand only when it dilutes the record to such an extent that the ALJ's decision becomes unsupported. In this case, the ALJ determined that Cazares' depression, anxiety, and OCD were not disabling on or before June 17, 2015. The records of mental health treatment from May and July 2016 do not show that Cazares was disabled at the time of the ALJ's decision one year earlier. The records, instead, reflect his condition one year later. Considering the evidence as a whole, these additional medical records reflect only that Cazares' condition deteriorated after his mother passed away in March 2016, nine months after the ALJ's decision.[7] Dkt. 3-3 at 46 ("Symptoms have been getting worse in context of his mother passing away.").

---

[7] There are no records for mental health treatment for the eleven months between the ALJ's decision and May 12, 2016.

It is Cazares' burden to show that the new records so dilute the evidence that the ALJ's decision is no longer supported and requires a remand. The additional evidence submitted to the Appeals Council does not do so. *Hamilton-Provost v. Colvin*, 605 Fed.Appx. 233, 239 (5th Cir. 2015) ("Remand is not appropriate solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition."). Reviewing the record as a whole, the ALJ's finding are still supported by substantial evidence, and the Appeals Council did not err. *See Morton*, 2011 WL 2455566 at *7 (stating that if, "in light of the new evidence, the [ALJ's] findings are still supported by substantial evidence," the Court must affirm the Commissioner's decision.). The Appeals Council properly invoked the procedures in 20 C.F.R. §§ 404.976(b)(1) and 416.1476(b)(1) when it explained to Cazares why it did not accept the submitted reports and advised him to file a new application if he wanted his post-decision treatment considered. Dkt. 3-3 at 14. In this case, the Appeals Council did not err.

### Recommendation

For these reasons, the court recommends that Cazares' motion for summary judgment be denied, and the Commissioner's motion for summary judgment be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72.

Signed at Houston, Texas on July 23, 2018.

Stephen Wm Smith
United States Magistrate Judge